FAEGRE DRINKER BIDDLE & REATH LLP
Kathryn E. Bettini (No. 032568)
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
Telephone: (480) 643-1850
E-mail: kathryn.bettini@faegredrinker.com

Attorney for Defendant
CUMIS Insurance Society, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| TruWest Credit Union,<br><br>              Plaintiff,<br><br>      vs.<br><br>CUMIS Insurance Society, Inc., an Iowa corporation, and DOES 1-10,<br><br>              Defendants. | No. CV-26-01736-PHX-DGC<br><br><br>DEFENDANT CUMIS INSURANCE SOCIETY, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT |

Defendant CUMIS Insurance Society, Inc. ("CUMIS")[1] respectfully moves to dismiss Plaintiff TruWest Credit Union's ("TruWest's") First Amended Complaint ("FAC") (4/7/2026) (Dkt. No. 10) for failure to state a claim upon which relief can be granted.

**INTRODUCTION**

This dispute involves a claim for coverage under a fidelity bond that TruWest purchased from CUMIS. In its FAC, TruWest alleges that it suffered a compensable loss under that fidelity bond when it reimbursed one of its members for funds stolen from the member's account by bad actors who gained illicit access to that account. Specifically, TruWest alleges that these bad actors obtained and updated the member's account information by calling

---

[1] Plaintiff initially named TruStage Financial Group, Inc., as the defendant in this action. Pursuant to a meet and confer, Plaintiff agreed to amend the complaint to name the correct defendant, CUMIS Insurance Society, Inc. The First Amended Complaint was filed on April 7 (Dkt. No. 10), naming CUMIS Insurance Society, Inc. as the defendant throughout, but the caption was not updated to reflect the fact that CUMIS had replaced TruStage Financial Group, Inc., as defendant in this action. Plaintiff filed a Notice of Errata (4/8/2026) (Dkt. No. 13) asking that the First Amended Complaint be stricken and replaced with a corrected version. Although the Court has not yet replaced the First Amended Complaint with the corrected version, CUMIS will proceed as though this correction has been made.

Faegre Drinker Biddle & Reath LLP
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
(480) 643-1850

Faegre Drinker Biddle & Reath LLP
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
(480) 643-1850

TruWest's contact center, and then electronically accessed the member's account, transferring funds from the member's home equity line of credit to his checking account. TruWest alleges that once the funds were transferred to the checking account, the bad actors obtained a debit card in the member's name and then used that card to liquidate those funds.

TruWest brings claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment, all arising from its belief that its bond claim was improperly denied. Even assuming the truth of the facts alleged by TruWest, however, the bond does not provide coverage for the loss sustained by TruWest. A fidelity bond is a type of insurance that generally protects businesses against losses from theft, forgery, and employee dishonesty. Electronic Crime coverage is an optional coverage that provides indemnity for specified losses, including those resulting from the unauthorized access of a business's computer system or computer network. The Electronic Crime provision in TruWest's fidelity bond covers "loss resulting *directly*" from "transfers of funds fraudulently effectuated." In this case, the fraudulent transfer did not result in any loss (much less "direct" loss as that term is interpreted in this context) because the funds remained available and accessible in the member's checking account after the transfer occurred. The subsequent loss (*i.e.*, the purported liquidation of the members checking account) was an *indirect* consequence of the unauthorized use of a computer and therefore not within the scope of coverage.

Even if that were not the case, the bond contains a general exclusion for losses resulting "directly or indirectly from the use of a personal identification number (PIN) to access an 'automated teller machine,' or the use of a plastic or other type of card, or plastic card number, to effectuate a transaction." In the FAC, TruWest explicitly alleges that the ultimate misappropriate of funds in this case was accomplished by using a debit card obtained by the bad actors in the name of the member. Thus, even if the withdrawal of funds would otherwise trigger the Electronic Crime coverage, the Plastic Card/PIN exclusion bars coverage.

Faegre Drinker Biddle & Reath LLP
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
(480) 643-1850

## Factual Background[2]

### A.    The Bond.

TruWest was insured under a Fidelity Bond, Bond Number 306492-6, effective from September 1, 2023, through September 1, 2024 (the "Bond").  [*See* Ex. A at CUMIS_000005] When purchasing the Bond, TruWest elected the optional coverages for "Electronic Crime." [*Id.* at CUMIS_000006]  "All coverages in this Bond are subject to the Declarations, Definitions, Exclusions, General Agreements and Conditions, except as modified in any endorsement." [*Id*. at CUMIS_000024]

The Bond's Electronic Crime coverage generally provides indemnity in three circumstances:  (i) direct loss from the erroneous entry of electronic data; (ii) direct loss from the malicious destruction of electronic data; and (iii) direct loss resulting from the transfer of the proceeds of an existing loan following the unauthorized access of a computer system.  The specific policy language addressing the latter circumstance is as follows:

> We will pay you for your loss resulting directly from payments or transfers of funds fraudulently effectuated through the withdrawal or transfer of the proceeds of an "accountholder's" existing "loan" by a person other than the "accountholder" who has obtained unauthorized access into the "accountholder's" account information, as maintained in "electronic data" form on a "computer system."

[*Id.* at CUMIS_000031 ("Electronic Crime," § P(3))]

The Bond also contains several exclusions describing certain losses that CUMIS "will not pay for."  [*Id.* at CUMIS_000057–66]  Among the exclusions is the Bond's "Plastic Card/PIN" exclusion, which includes "[a]ny loss resulting directly or indirectly from the use of a personal identification number (PIN) to access an 'automated teller machine,' or the use of a plastic or other type of card, or plastic card number, to effect a transaction[.]"  [*Id.* at CUMIS_000064]  Under the Bond's Kiosk Endorsement, the Plastic Card/Pin exclusion

---

[2] This factual background is taken from the allegations in TruWest's Complaint and the fidelity bond at issue, attached hereto as Exhibit A (with Bates numbers added for ease of reference).  *See, e.g.*, *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (finding extrinsic document was integral to the complaint and could be considered on motion to dismiss).

applies to Electronic Crime coverage unless the loss involves a transaction at a kiosk where a plastic card is used strictly as an "authentication mechanism," but the plastic card number is not used for clearing or routing the transaction. [*Id.* at CUMIS_000090]

**B.     TruWest's Bond Claim.**

In or about November 2023, bad actors gained access to one of TruWest's member's accounts by obtaining and updating that member's account verification information. [FAC ¶ 8] These individuals called TruWest's contact center and updated the member's account information over the phone. [*Id.*] Between November 2023 and March 2024, the bad actors electronically transferred funds from the member's home equity line of credit ("HELOC") to the member's checking account. [*Id.* ¶ 10] They then obtained a debit card in the member's name for the member's checking account, and used that card to "liquidate the stolen funds[.]" [*Id.*] TruWest reimbursed the member $388,388.00 that was taken from his account. [*Id.* ¶¶ 11-12] TruWest made a claim for its losses under the Bond, which was denied on June 13, 2024. [*Id.* ¶¶ 12-13]

**Prefatory Note:  The Applicable Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Determining whether the complaint states a "plausible" claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. While the Court must "take all of the factual allegations in the complaint as true," *id.* at 678, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Iqbal*, 556 U.S. at 678 (rule regarding acceptance of factual allegations "is inapplicable to legal conclusions" or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."). Nor is the Court required to accept as true "conclusory allegations which

Faegre Drinker Biddle & Reath LLP
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
(480) 643-1850

are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998).

## Argument

The Court should grant CUMIS's motion and dismiss the FAC. TruWest's claims each rest on the fundamental premise that it was entitled to coverage under the Bond for its losses, but even assuming the truth of TruWest's well-pled allegations, the Court should find there is no coverage based on the plain text of the Bond's insuring provision and/or the Plastic Card/PIN exclusion. Once the Court makes such a finding, the Court can also determine that, as a matter of law, there has been no breach of the contract or of the duty of good faith and fair dealing.

**I.    THE BOND DOES NOT PROVIDE COVERAGE FOR TRUWEST'S CLAIM.**

In its FAC, TruWest asserts legal conclusions couched as factual allegations—*e.g.*, that its loss falls "squarely within the coverage provided under the Bond" and that "[t]here are no exclusions under the terms of the Bond that would permit [TruStage] to avoid indemnifying TruWest for the losses incurred." [FAC ¶ 14] But the Court cannot accept legal conclusions as true and instead must look to the well-pled factual allegations to determine whether they plausibly state a claim for relief. *See Twombly*, 550 U.S. at 570. In this case, there is only one reasonable conclusion: the Bond does not cover TruWest's alleged losses.

As set forth in the FAC, unknown fraudsters stole money from a TruWest member through a multi-step process. The fraudsters first obtained and updated the member's account verification information. [*See* FAC ¶ 8] They then called TruWest's contact center and updated the member's account information over the phone. [*Id.*] Using the member's account information, these individuals accessed the member's accounts electronically and transferred funds from the member's HELOC to the member's checking account. [*Id.* ¶ 10] In the final step of the process, these individuals obtained a debit card for the checking account in the member's name and used the same to "liquidate" the stolen funds. [*Id.*]

Generally, the insured—here, TruWest—has the burden of establishing coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any

Faegre Drinker Biddle & Reath LLP
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
(480) 643-1850

exclusion. *Keggi v. Northbrook Property & Cas. Ins. Co.*, 199 Ariz. 43, 46, 13 P.3d 785, 788 (Ct. App. 2000). "If an insurer meets the burden to establish that an exclusion applies, the burden shifts back to the insured to establish tha[t] an exception to the exclusion affords coverage." *Selective Ins. Co. of S.C. v. Yocum*, 799 F. Supp. 3d 907, 913 (D. Ariz. 2025). In other words, if there is no coverage under the insuring clause, the analysis can stop and the Court can find no coverage, but if there is coverage under the insuring clause, the Court must determine whether an exclusion applies. Similarly, if there is coverage and no exclusion applies, the analysis can stop and the Court can find that there was coverage, but if an exclusion applies, the Court must determine whether the plaintiff has established that is claimed loss is subject to an exception to that exclusion.

Here, there is no coverage under the Bond because, even assuming the truth of all of TruWest's well-pleaded factual allegations, there is no coverage under any insuring provision. The Court can thus find that, as a matter of law, the Bond did not provide coverage for TruWest's claimed losses. Moreover, even if there was coverage under an insuring provision (and there is not), there is a specific exclusion that directly applies to TruWest's claimed loss and TruWest has not pleaded any facts that would bring its claimed loss within the scope of any exception to that exclusion.

### A. TruWest's Loss Does Not Fall Within Scope Of Electronic Crime Coverage.

The relevant language of the Electronic Crime provision states that:

> [w]e will pay you for your loss resulting ***directly*** from payments or ***transfers*** of funds ***fraudulently effectuated through the*** withdrawal or ***transfer of the proceeds of an "accountholder's" existing "loan"*** by a person other than the 'accountholder' who has obtained unauthorized access into the "accountholder's" account information, as maintained in "electronic data" form on a "computer system."

[Ex. A at CUMIS_000031 ("Electronic Crime" § P(3)) (emphases added)] In other words, this portion of the Electronic Crime coverage applies if an unauthorized user accesses a computer system and misappropriates loan proceeds ***and*** directly causes a loss.

As specified in the FAC, after illegally gaining access to the member's HELOC, the bad actors here transferred proceeds from the line of credit to the member's checking account.

Faegre Drinker Biddle & Reath LLP
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
(480) 643-1850

Faegre Drinker Biddle & Reath LLP
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
(480) 643-1850

At that point, there was no loss—direct or otherwise—because the member retained access to the loan proceeds. The loss only occurred later when the fraudsters used a debit card obtained in the member's name to "liquidate[]" the funds from that account. [*See* FAC ¶ 10]  It was only that "liquidation" that triggered TruWest's obligation to reimburse its member for the lost funds. Contrary to TruWest's claim, the "transfer" that resulted from the "unauthorized access into the 'accountholder's' account information" did ***not*** result in a loss.

TruWest may argue that the loss flowed from the initial transfer of the funds into the member's checking account, but any such argument belies the Bond's explicit requirement that the losses result ***directly*** from the covered conduct. Courts have acknowledged that, under Arizona law, the use of the term "direct" in an insurance policy means precisely what it means—"'direct means direct,' or immediate." *Discovery Land Co. LLC v. Berkley Ins. Co.*, No. CV-20-01541-PHX-ROS, 2023 WL 2503634, at *7 (D. Ariz. Mar. 14, 2023) (*quoting Vons Cos. v. Fed. Ins. Co.*, 212 F.3d 489, 492 (9th Cir. 2000)).  In *Berkley*, Judge Silver analyzed an insurance requirement that provided "Employee Theft" coverage that would pay for losses or damages resulting directly from theft committed by an employee. *Id.* at *4.  The policy defined employee, in part, as an individual "whom you compensate directly[.]" *Id.*  The theft in that matter was perpetrated by an individual whose compensation was provided through a third party—the plaintiffs paid the third party, and the third party then paid the perpetrator. *Id.* at *7.  The defendant challenged coverage, in part by asserting the perpetrator was not "compensate[d] directly" by the plaintiff.  In analyzing the issue, Judge Silver recognized that it must read the phrase "as a plain and ordinary person would," and defined "direct" as "proceeding from one point to another in time or space without deviation or interruption," "marked by absence of intervening agency, instrumentality, or influence," or "stemming immediately from a source." *Id.*  Judge Silver found that the fact that funds flowed through a third party meant that compensation was not "direct." *Id.* at *8.

Similarly, in this instance, any "loss" resulting from the bad actors' scheme cannot be said to have resulted "directly" from the transfer of the funds from the member's HELOC to the member's checking account because, without the bad actors' subsequent step of

7

Faegre Drinker Biddle & Reath LLP
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
(480) 643-1850

fraudulently obtaining a debit card in the member's name and engaging in an additional (and separate) withdrawal, that money would never have left the member's possession.  This is entirely consistent with how courts throughout the Ninth Circuit have interpreted similar language in fidelity bonds and other insurance policies.  *See, e.g.*, *Vons*, 212 F.3d at 492 (in context of employee dishonesty policy covering "direct losses," holding that "'direct' means 'direct'"); *United Gen. Title Ins. Co. v. Am. Int'l Grp., Inc.*, No. 01-56770, 2002 WL 31554048, at *2 (9th Cir. Nov. 14, 2002) (same); *Valley Cmty. Bank v. Progressive Cas. Ins. Co.*, 854 F. Supp. 2d 697, 709 (N.D. Cal. 2012) (citing *United Sec. Bank. v. Fid. & Deposit Co.*, No. 96-16331, 1997 WL 632606, at *1 (9th Cir. Oct. 9, 1997)) (policy requirement of losses that "result directly from" is construed more narrowly than "losses proximately caused by"); *Taylor & Lieberman v. Fed. Ins. Co.*, No. CV 14-3608, 2015 WL 3824130, at *3 (C.D. Cal. June 18, 2015), *aff'd*, 681 F. App'x 627 (9th Cir. 2017) (citing *Tooling, Mfg. & Techs. Ass'n v. Hartford Fire Ins. Co.*, 693 F.3d 665, 674 (6th Cir. 2012)) ("A common use interpretation of direct loss provides that a loss is not direct unless it follows immediately and without intervening space, time, agency, or instrumentality.").

TruWest's loss did not result from the transfer of funds from the member's line of credit, the only act which would trigger Electronic Crime coverage. Rather, TruWest's loss resulted from (and only occurred after) the intervening "liquidation" of funds from the member's checking account, which is ***not*** an action that triggers Electronic Crime coverage. TruWest's claim is not within the scope of the Bond's Electronic Crime coverage.

**B.      Loss Is Specifically Excluded By Plastic Card/PIN Exclusion.**

The Plastic Card/PIN exclusion excludes losses from "the use of a plastic or other type of card, or plastic card number, to effect a transaction."  [Ex. A at CUMIS_000064]  Here, TruWest expressly pleads that the bad actors caused the loss by "liquidating" the member's accounts ***using a plastic debit card***, thereby triggering an obligation for TruWest to reimburse its member. [*See* FAC ¶ 10]  Therefore, by TruWest's own admission, the loss resulted ***directly*** (or at the very least indirectly) from the use of a plastic or other type of card to effect a transaction—a loss which is clearly excluded by the plain text of the Plastic Card/PIN

exclusion.

Because TruWest's own allegations establish the applicability of the Plastic Card/PIN exclusion generally, the question becomes whether TruWest can establish that an exception to that exclusion applies here. Per the terms of the Bond, there are some coverages to which the Plastic Card/PIN exclusion does not apply. Under the Bond's Kiosk endorsement, Electronic Crime Coverage **can be** an exception to the Plastic Card/PIN exclusion, but only in very limited circumstances—where the plastic card number is used "strictly as an 'authentication mechanism,' but . . . is not used for clearing or routing the transaction." [Ex. A at CUMIS_000090] It is TruWest's burden to establish that such an exception would apply, and it has utterly failed to plead facts that would do so. There are **no** allegations that the transactions involved took place at a "kiosk" (as the term is used in the Bond) or that the plastic card and/or PIN were used solely as an "authentication mechanism"—both of which are necessary preconditions to excepting Electronic Crime coverage from the Plastic Card/PIN exclusion.

Even if the claimed loss here somehow fit within the Bond's insuring clauses, the Plastic Card/PIN exclusion clearly excludes coverage.

## II.   LACK OF COVERAGE REQUIRES DISMISSAL OF ALL CLAIMS.

As noted above, TruWest has asserted three causes of action against CUMIS. The lack of coverage established above requires dismissal of all three causes of action.

First, TruWest asserts a cause of action for breach of contract. Under Arizona law, the elements of such a claim are "(1) a contract exists between the plaintiff and the defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to the plaintiff." *Nerdig v. Electric Ins. Co.*, No. CV-17-01859-PHX-GMS, 2018 WL 4184926, at *3 (D. Ariz. Aug. 31, 2018) (citing *Frank Lloyd Wright Foundation v. Kroeter*, 697 F. Supp. 2d 1118, 1125 (D. Ariz. 2010)). In general, a breach of an insurance contract "occurs when the insurer denies the insured the relevant coverage." *Id.* (quoting *Clark Equip. Co. v. Ariz. Prop. and Cas. Ins. Guar. Fund*, 943 P.2d 793, 800 (Ariz. Ct. App. 1997)). As here, where there **is** no applicable coverage, there has been no breach.

9

Faegre Drinker Biddle & Reath LLP
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
(480) 643-1850

Second, TruWest asserts a cause of action for breach of the implied covenant of good faith and fair dealing.  Under Arizona law, an insurer has no liability for such a claim where the insurance contract at issue does not provide for coverage. *Perkins v. Employers Mut. Cas. Co.*, 507 F. Supp. 3d 1172, 1184-85 (D. Ariz. 2020) (dismissing bad faith claim and stating that bad faith claims were foreclosed where the court, based on the pleadings "has determined that the policy did not provide coverage to Plaintiffs" and therefore the insurer "did not act unreasonably in denying coverage.")  Because the Court can determine at this point that there is no coverage under the Bond, TruWest's bad faith claim should also be dismissed.

Third, TruWest seeks a judicial declaration that there is an obligation for the issuer of the Bond to provide coverage for its claimed losses.  Because no such coverage exists, the claim for a declaratory judgment should also be dismissed.

**Relief Requested**

For the reasons set forth above, CUMIS respectfully requests that the Court enter judgment on the pleadings in favor of CUMIS and dismiss TruWest's First Amended Complaint with prejudice.

DATED this 21st day of April, 2026.

FAEGRE DRINKER BIDDLE & REATH LLP

By: s/ Kathryn E. Bettini
Kathryn E. Bettini
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251

Attorneys for Defendant
CUMIS Insurance Society, Inc.

Filed electronically with the Court and served on parties of record by the Court's CM/ECF system this 21st day of April, 2026.

 s/ Mary Ann Villa

376812160

10

Faegre Drinker Biddle & Reath LLP
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
(480) 643-1850

## **LOCAL RULE 12.1(c) CERTIFICATION**

I, Kathryn E. Bettini, hereby certify that, before filing Defendant CUMIS Insurance Society, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"), I notified counsel for Plaintiff TruWest Credit Union as to the issues asserted in the Motion and the parties were unable to agree that the pleading was curable in any part by a further permissible amendment offered by the pleading party.

      s/ Kathryn E. Bettini
      Kathryn E. Bettini