Mark D. Chester (011423)
**CHESTER LAW, PLLC**
9332 N. 95th Way, Suite 109
Scottsdale, Arizona 85258
Telephone: 480.922.3939
Facsimile: 602.704.6069
mchester@mdclawyers.com

Gregory S. Korman (*Pro Hac Vice*)
greg.korman@katten.com
Ashley T. Brines (*Pro Hac Vice*)
ashley.brines@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067-5010
Telephone: 310.788.4400
Facsimile: 310.788.4471

*Attorneys for Plaintiff*
*TruWest Credit Union*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TruWest Credit Union, | Case No. 2:26-cv-01736-DGC |
| Plaintiff, | |
| v. | **PLAINTIFF TRUWEST CREDIT UNION'S OPPOSITION TO DEFENDANT CUMIS INSURANCE SOCIETY, INC.'S MOTION TO DISMISS** |
| CUMIS Insurance Society, Inc., an Iowa corporation; and Does 1-10, | |
| Defendants. | (Oral Argument Requested) |

## I.    INTRODUCTION

Defendant CUMIS Insurance Society, Inc. ("CUMIS") sold TruWest Credit Union ("TruWest") a fidelity bond (the "Bond") with additional coverage for Electronic Crimes. Now it refuses to honor that coverage. Advancing a cramped reading of the Bond that defies the policy's plain language, Arizona law, and common sense, CUMIS claims this particular electronic crime is not a compensable loss as a matter of law. CUMIS is wrong.

The facts are straightforward: unidentified fraudsters hacked into a TruWest member's account, drew down funds from the member's home equity line of credit ("HELOC") loan, and absconded with those funds. TruWest reimbursed its member and submitted a claim under the Bond's broad "Electronic Crime" coverage—coverage that indemnifies TruWest for losses resulting directly from the fraudulent transfer of an accountholder's loan proceeds by an unauthorized person, exactly what transpired in this case. CUMIS denied the claim, forced TruWest to sue, and now attempts to have TruWest's claims dismissed.

CUMIS's motion should be denied for three independent reasons.

***First***, TruWest's loss falls squarely within the Bond's Electronic Crime coverage. It is undisputed that the accountholder's existing loan proceeds were transferred by fraudsters who obtained unauthorized access into the accountholder's account, triggering the Bond's coverage. CUMIS contests only whether TruWest's loss resulted "directly" from those manifestly covered acts, and its argument on this point ignores common sense and practical reality. The fraudsters' theft was one continuous, unitary scheme; they hacked the HELOC, transferred the loan proceeds, and withdrew the stolen funds. CUMIS would artificially treat the fraud as a disjointed series of independent steps, with the final withdrawal as the one and only "direct" cause, ignoring that every step taken by the fraudsters was part of an integrated scheme.

***Second***, and relatedly, CUMIS erroneously claims there can only be one "direct" cause of loss. But actually, the rule in Arizona is that "an act or force need not be the sole cause of damage for causation to exist[,]" and an insured may recover where the covered

peril is the proximate cause of the loss "even 'though there may have been other contributing causes,'" which is exactly what TruWest alleges. *Koory v. Western Casualty & Surety Co.*, 153 Ariz. 412, 414, 737 P.2d 388, 390 (1987). The only qualification to this is if the insurance policy contains explicit concurrent causation language clearly communicating the limitation. *Millar v. State Farm Fire & Cas. Co.*, 167 Ariz. 93, 97, 804 P.2d 822, 826 (Ariz. Ct. App. 1990); *Holy Trinity Greek Orthodox Church v. Church Mut. Ins. Co.*, 2006 WL 18488, at *5–6 (D. Ariz. Jan. 4, 2006).

Even if the unified fraudulent scheme were counterfactually treated as several isolated standalone steps, as CUMIS contends, any one of the multiple concurrent causes contributing to the loss, including the covered draw-down from the HELOC, properly triggers coverage. The only way CUMIS could avoid paying a loss caused concurrently by both an excluded and covered cause is if the Bond contains an express clause excluding coverage for all concurrent causes. This is known as a concurrent cause provision. *See Fairfield Homes, Inc. v. Granite State Insurance Co.*, No. CV 09-360 TUC DCB, 2011 WL 11683253, at *7 (D. Ariz. Feb. 14, 2011) (rejecting insurers argument because the policy lacked "concurrent cause" language "to preclude liability where there are concurrent causes and one is covered and one not."). Since the Bond has no such language, the fact that other events may have contributed to the loss does not bar coverage.

***Third***, and for the same reason, the Plastic Card/PIN exclusion does not bar TruWest's claim. To be sure, subject to exceptions, losses caused by Plastic Card or PIN transactions are not covered. But the Bond lacks an explicit, unequivocal statement that coverage for *all* losses disappears in *any* case where both covered and excluded perils contribute to the loss. Under Arizona law, that explicit, unequivocal statement must be present in the Bond for CUMIS to prevail, and it is not there. Hence, even if the fraudster's use of a debit card contributed to the loss, that is not dispositive; the predominating cause of the loss was the fraudulent HELOC draw-down, the undisputedly covered electronic crime. The fortuity that the fraudsters chose a debit card rather than a wire transfer, online transfer, paper check, or branch visit to move the funds they had already stolen is not

material or even relevant. Because the plastic card exclusion does not "clearly and distinctly communicate" its reach to losses involving concurrent covered causes, it is at best ambiguous and must be construed against CUMIS. *Roberts v. State Farm Fire & Cas. Co.*, 146 Ariz. 284, 286, 705 P.2d 1335, 1337 (1985). It certainly cannot be used to eliminate coverage for a covered Electronic Crime merely because the fraudsters decided to use a plastic card in the course of their unified fraudulent scheme.

In short, CUMIS sold TruWest additional Electronic Crime coverage, collected the extra premiums, then refused to pay the moment a covered electronic crime occurred. The Court should deny the motion to dismiss and give TruWest its day in court.

## II.     FACTUAL BACKGROUND

### A.     The Fidelity Bond.

TruWest purchased the Bond from CUMIS. (First Amended Complaint ("FAC") ¶ 7.) The Bond's "Electronic Crime" coverage provides the following:

> We will pay you for your loss resulting directly from payments or transfers of funds fraudulently effectuated through the withdrawal or transfer of the proceeds of an "accountholder's" existing "loan" by a person other than the "accountholder" who has obtained unauthorized access into the "accountholder's" account information, as maintained in "electronic data" form on a "computer system."

(Mot., Ex. A at CUMIS_000031.)

The Bond contains a Plastic Card/PIN exclusion, which excludes coverage for "[a]ny loss resulting directly or indirectly from the use of a personal identification number (PIN) to access an 'automated teller machine,' or the use of a plastic or other type of card, or plastic card number, to effect a transaction[.]" (*Id*. at CUMIS_000064.)

### B.     TruWest's Bond Claim.

In or about November 2023, unidentified fraudsters illegally gained access to a TruWest member's account by obtaining and updating that member's account verification information. (FAC ¶ 8.) The fraudsters accessed and drew down substantial funds from the member's available HELOC loan balance and transferred those funds to the member's

checking account. (*Id.* ¶ 10) Once these stolen funds were transferred, the fraudsters liquidated the stolen funds through use of a fraudulently obtained debit card. (*Id.*)

In total, the fraudsters stole $388,388.00 from the TruWest member's accounts. (*Id.* ¶ 11.) TruWest reimbursed its member for the funds and submitted a claim to CUMIS, which denied coverage on June 13, 2024. (*Id.* ¶¶ 12-13.) On March 13, 2026, TruWest initiated this action, asserting three causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) declaratory relief. (*Id.* ¶¶ 16-29.)

## III. LEGAL STANDARDS GOVERNING THIS MOTION

Rule 8 requires a complaint to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff meets this requirement by asserting well-pled allegations showing a "plausible" claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under Rule 12(b)(6), "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to plaintiff." *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998).

## IV. CUMIS'S MOTION SHOULD BE DENIED BECAUSE TRUWEST'S LOSS IS COVERED BY THE "ELECTRONIC CRIME" COVERAGE

### A. The Fraudsters' Conduct Directly Caused the Loss.

In Arizona, courts apply "a rule of common sense" when interpreting insurance policies. *First Am. Title Ins. Co. v. Johnson Bank*, 239 Ariz. 348, 356, 372 P.3d 292, 300 (2016) (quoting *Emps. Mut. Cas. Co. v. DGG & CAR, Inc.*, 218 Ariz. 262, 264, 183 P.3d 513, 515 (2008)). "Under this rule, words are given their ordinary meaning and read from the perspective of one [] 'who is untrained in the law or insurance.'" *Team 44 Restaurants LLC v. Am. Ins. Co.*, 562 F. Supp. 3d 61, 65 (D. Ariz. 2021) (quoting *Aztar Corp. v. U.S. Fire Ins. Co.*, 223 Ariz. 463, 224 P.3d 960, 966 (Ariz. Ct. App. 2010). "Insurance policy provisions must be read as a whole, giving meaning to all terms." *Liberty Ins. Underwriters, Inc. v. Weitz Co., LLC*, 215 Ariz. 80, 83, 158 P.3d 209, 212 (Ct. App. 2007). If the meaning of a policy remains ambiguous, courts then construe the policy against the insurer. *Team 44 Restaurants LLC*, 562 F. Supp. 3d at 65. The interpretation of an insurance policy is a

question of law. *Emps. Mut. Cas. Co.*, 183 P.3d at 515.

CUMIS does not dispute that TruWest's loss results overwhelmingly from "payments or transfers of funds fraudulently effectuated through the transfer or withdrawal of the proceeds of" the member's HELOC loan. CUMIS does not dispute that the member's HELOC loan balance was tapped "by a person other than the 'accountholder.'" Nor does CUMIS dispute that the fraudsters "obtained unauthorized access" into the accountholder's account information. In fact, CUMIS concedes every element of coverage except whether the loss resulted "directly" from the covered acts. (Mot. at 6-7, Ex. A at CUMIS_000031.)

For its argument to avoid paying this claim, CUMIS points out that the stolen HELOC funds were still in the member's account until the fraudsters moved them out. CUMIS argues that the member still had "access" to those loan proceeds. (Mot. at 7–8.) CUMIS ignores the fraudsters' cohesive scheme to steal the accountholder's loan proceeds, disregarding the HELOC draw-down, and focuses artificially on the withdrawal. CUMIS says the loss was not caused by the "transfer of proceeds of an 'accountholder's' existing 'loan'" because that was a different step in the scheme from the subsequent withdrawal, which CUMIS contends is the only event that matters. This reasoning is both self-serving and untenable.

The cause that enabled the theft, that was core to the fraud, and that set every other event in motion was the act of hacking into the customer's HELOC account and drawing down on it. That was the act of stealing—the moment the fraudsters seized control of the member's loan proceeds and converted them to their own use. *Cf.* Ariz. Rev. Stat. Ann. § 13-1802 (criminal theft occurs when one "[c]ontrols property of another with the intent to deprive the other person of such property"). The draw-down was the direct cause of loss because without it the loss could never have occurred; without that step, there was no HELOC money to "withdraw." Maybe there was more than one direct cause, but without doubt, the HELOC draw was one of them. This must be true because subsequent withdrawal is entirely subordinate to and dependent upon the fraudsters having first drawn down the HELOC. It cannot be that CUMIS can avoid its own Electronic Crime coverage every time

a fraudulent scheme has more than one step.

In support of its interpretation of the policy's "direct" causation requirement, CUMIS cites *Discovery Land Co. LLC v. Berkley Ins. Co.*, No. CV-20-01541-PHX-ROS, 2023 WL 2503634 (D. Ariz. Mar. 14, 2023), which is markedly distinguishable. *Discovery Land Co.* involved an insurance policy that covered losses resulting "directly" from employee theft, and the definition of "employee" required the employee be "compensate[d] directly" by the insured. *Id.* at *4. The insured transferred over $14 million to its outside law firm's account to buy real estate. *Id.* at *1. One lawyer at the law firm, Jones, then improperly transferred almost $13 million of those funds to himself from the firm's account. *Id.* at *2. That loss predictably was not covered because Jones the lawyer was not the insured's paid employee; he was the law firm's paid employee. Because the insured did not pay Jones the lawyer, *i.e.*, the thief, the definition of employee was not met. *Id.* at *7.

*Discovery Land Co.* is inapplicable for a number of reasons. First, the court did not address the issue here, which is whether the theft was caused directly by the fraudster; instead, the court decided whether Jones the lawyer had been compensated directly by the insured to fall under the definition of an "employee." *Id.* As the court noted, "nothing was paid to Jones by Plaintiffs directly; in other words, Plaintiffs did not directly pay Jones a commission." *Id.* at *8. Here, in contrast, employment does not matter. There was just one single ***unauthorized*** transaction. There was no legal part and illegal part, no authorized then unauthorized transfer. Instead, the "fraudulently effectuated" transfer of proceeds obtained via unauthorized access was direct, initiated ***by*** the fraudsters and paid out ***to*** the fraudsters. Because the fraudsters stole the money themselves to pay themselves, the direct payment link that was missing in *Discovery Land Co.* is present here.

*Discovery Land Co.* is distinguishable for the additional reason that the insured authorized the initial transfer of funds to the law firm. *See id.* at *7 ("Plaintiffs wired money to [the law firm] pursuant to the engagement letters"). Therefore, no theft actually occurred until the funds were stolen from the law firm by Jones the lawyer. For the instant matter to be like *Discovery Land Co.*, the initial draw-down on the HELOC would have to have been

6

authorized; TruWest's member would have had to have drawn on the HELOC himself, or else allowed the fraudsters to do so. None of that happened here. The member never approved withdrawal of funds from his HELOC loan by the fraudsters, so the resulting loss occurred as soon as the fraudsters gained unauthorized access to the member's loan and transferred the money without his permission.

The other string of cases CUMIS cites to support its interpretation of what constitutes a "direct loss" are similarly inapposite because they involve the interpretation of language covering indemnity policies that did or did not provide *third-party* coverage for losses arising out of the tortious conduct of employees. (*See* Mot. at 8.) Indeed, in one of the cases cited by CUMIS, the court described a fact pattern comparable to the one present here and acknowledged that such a situation *would* satisfy the "direct loss" requirement, *Taylor & Lieberman v. Fed. Ins. Co.*, No. CV 14-3608 RSWL SHX, 2015 WL 3824130, at *4 (C.D. Cal. June 18, 2015), *aff'd*, 681 F. App'x 627 (9th Cir. 2017). As the court put it, "[i]f the funds had been held in an account owned or attributed to Plaintiff, such as an escrow account [] and a hacker had entered into Plaintiff's computer system and been able to withdraw funds such that Plaintiff's accounts were immediately depleted, then Plaintiff would be correct in asserting coverage from the Policy." *Id.*

Once the loss occurred—at the point the funds were illegally accessed and transferred from the HELOC to the member's checking account, which the fraudsters accessed and controlled—it matters little whether they made off with it by online transfer, wire transfer, ATM/debit card, writing a check, or walking into a branch. Those are just vehicles for absconding with the money that was *already* electronically stolen. CUMIS's argument is analogous to saying it was not the bank robbery that caused the harm, but the robber's choice of getaway car. Just like there is no getaway without the bank robbery, here there was no electronic crime without the HELOC draw-down, which everyone agrees is a covered loss.

Arizona courts care about common sense readings of insurance policies, and the most reasonable, common-sense reading of the Electronic Crime provision is that any loss caused

directly from unauthorized access to an accountholder's existing loan is covered. *Team 44 Restaurants LLC*, 562 F. Supp. 3d at 65. CUMIS at most points to concurrent causes of the loss, but it does not and cannot identify any independent, unrelated, intervening cause that *severed* the causal chain; every step in the fraudsters' scheme—from the initial hack to the final withdrawal—flowed from the same direct cause: the fraudsters' unauthorized access to the member's loan funds. Because the predominant cause of TruWest's loss was the fraudulent access to and transfer of the customer's HELOC proceeds, the loss is covered under the Bond's Electronic Crime provision, and the motion should be denied.

**B.      CUMIS'S Interpretation of the Bond's Electronic Crime Coverage Does Not Comport with Arizona Law on Exclusions of Concurrent Causation.**

In addition to mischaracterizing the fraudulent scheme as standalone, independent standalone events, CUMIS also argues that the word "directly" means that coverage is negated by the presence of a concurrent cause. Because more than one thing contributed to the loss, CUMIS says, only the very last one counts. Arizona law is quite the opposite. "In Arizona, as in most jurisdictions, an act or force ***need not*** be the sole cause of damage for causation to exist." *Koory*, 737 P.2d at 390 (emphasis added). "Absent limiting language in the policy," the insured may recover if the covered conduct is the "proximate cause of his loss, even 'though there may have been other contributing causes.'" *Id.* at 390, 392 (interpreting policy language covering "all direct loss caused by …[w]indstorm" to mean insurer could recover under his policy for damage caused by a windstorm "even though other factors contributed to his loss").

Where an insurer seeks to exclude coverage for a loss involving concurrent covered and excluded causes, Arizona law requires the insurer include explicit language in its policy that "clearly and distinctly communicates to the insured the nature of the limitation." *Roberts*, 705 P.2d at 1337; *see also Millar*, 804 P.2d at 826. The policy must say, unequivocally, that the presence of other causes negates coverage. Absent such language, "exclusionary clauses are interpreted narrowly ***against*** the insurer." *Scottsdale Ins. Co. v. Van Nguyen*, 158 Ariz. 476, 479, 763 P.2d 540, 543 (Ct. App. 1988) (emphasis added).

"Directly" does not mean "to the exclusion of all other possible contributing factors." Therefore, the mere inclusion of the word "directly" is not the explicit "limiting language" necessary in Arizona to negate the proximate causation doctrine.

*Holy Trinity* and *Millar* illustrate this principle. Both cases involved dual causation scenarios in which water leaked from broken water lines, causing soil subsidence beneath buildings, which in turn caused cracking and sloping of walls and floor slabs. *Holy Trinity*, 2006 WL 18488, at *2; *Millar*, 804 P.2d at 823. The policies covered damage caused by water but not loss caused by "earth movement"; in each case the parties disputed whether "earth movement" caused by water damage, as opposed to natural phenomena or an act of God, would be covered. *Holy Trinity*, 2006 WL 18488, at *5; *Millar*, 804 P.2d at 824-25. Key to both rulings was the crucial fact that both policies contained broad, explicit exclusions for concurrent causation, and it was this language that the courts relied upon in denying coverage.

In *Holy Trinity*, the policy stated: "We will not pay for loss or damage caused directly or indirectly by any of the following…." 2006 WL 18488, at *6. So far, this is similar to the language in the Bond. But the policy also contained dispositive language that is conspicuously absent here: "Such loss or damage is excluded ***regardless of any other cause or event that contributes concurrently or in any sequence to the loss***." *Id*. (emphasis added). In other words, the policy did not just disclaim payment for a genre of causation, it specifically and expressly stated that the presence of that genre of causation will always affirmatively eliminate coverage no matter what other cause, even a covered cause, might have contributed to the loss. The court held that this concurrent-causation clause precluded coverage for damage caused "either directly or indirectly, by 'earth movement'" even where the *otherwise covered* water infiltration was a contributing cause. *Id.* Thus, it was not the word "directly" that precluded coverage, it was the explicit statement that any loss that would otherwise be covered was negated by the presence of earth movement.

Similarly in *Millar*, the policy contained an explicit concurrent-causation exclusion provision: there was no coverage for "any loss which would not have occurred in the

absence of one or more of the excluded events," "***regardless*** of [ ] the cause of the excluded event; or [ ] other causes of the loss; or [ ] whether ***other causes acted concurrently*** or in any sequence with the excluded event to produce the loss." 804 P.2d at 825 (emphasis added). The exclusion further applied to losses "caused by, resulting from, contributed to, or aggravated by" earth movement, "***whether combined with water or not***." *Id.* (emphasis added).

In both cases, the courts held that the unambiguous concurrent-causation language left no room for interpretation—any loss caused directly or indirectly by earth movement was excluded, even if any other contributing cause otherwise would have been covered. The court in *Holy Trinity* emphasized that under Arizona law, "if an insurer wishes to limit liability, it must employ language in the policy which clearly and distinctly communicates to the insured the nature of the limitation." 2006 WL 18488, at *5 (*quoting Roberts*, 705 P.2d at 1337). In that case, the insured had done so; in this case, CUMIS has not.

Granted, the courts in *Holy Trinity* and *Millar* were evaluating the scope of insurance exclusions, as opposed to a coverage provision like that at issue here, but they are two sides of the same coin, and the logic applies equally. CUMIS's Bond contains no comparable concurrent-causation language. No provision takes away all coverage "regardless of any other cause or event." No clause addresses, much less excludes losses from causes acting "concurrently or in any sequence." The Electronic Crime provision only references direct or indirect causation, leaving room for any other type of concurrent causation to provide a basis for coverage.

*Fairfield Homes, Inc. v. Granite State Insurance Co.*, 2011 WL 11683253, is on point. There, the court considered a policy that disclaimed coverage for liability "arising out of" land subsidence—language comparable to the "resulting directly from" language in the Bond at issue here. *Id.* at *3, *6. The court distinguished this language from the concurrent-causation clauses in *Millar* and *Holy Trinity*, which "unambiguously excluded all earth movement and subsidence, regardless of the cause of the event or other causes of the loss or whether other causes acted concurrently or in sequence with the excluded event

to produce the loss." *Id.* Summarizing Arizona law on this issue, the court noted that "[i]n interpreting 'arising out of' language, [Arizona] has not required direct proximate cause ... but only some causal relation or connection between the two." *Id.* at *3. Because the "arising out of" clause was the only causation language in the policy, the court found the exclusion ambiguous and applied the default Arizona rule that ambiguity is "construed against the insurer, and this is especially true where the ambiguity involves an exclusionary clause." *Id.* at *7 (citing *Millar*, 804 P.2d at 824). The court concluded that even with the "arising out of" causation language, there was "no concurrent cause clause in the Granite policy to preclude liability where there are concurrent causes and one is covered and one not." *Id.*

The same analysis applies here. Had CUMIS truly intended to exclude coverage for losses where loan proceeds were transferred by an unauthorized person before the stolen money was withdrawn, as if the withdrawal was divorced from the HELOC draw-down, then CUMIS was required to have spelled out that limitation clearly and unambiguously—as the insurers did in *Millar* and *Holy Trinity*. CUMIS did not do so, probably because this is a paradigmatic case of Electronic Crime, and instead using language similar to that in *Fairfield Homes*. Because no explicit concurrent-causation exclusion language exists in the Bond, there is at a minimum an ambiguity as to coverage, and under well-settled Arizona law, that ambiguity must be construed against CUMIS and in favor the insured, TruWest. *Scottsdale Ins. Co.*, 763 P.2d at 543; *Millar*, 804 P.2d at 824 ("where the ambiguity involves an exclusionary clause," it is construed against the insurer).[1] The Court should deny CUMIS's motion to dismiss.

---

[1] At the very least, the existence of an ambiguity "presents a question of fact inappropriate for resolution on a motion to dismiss." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1118 (9th Cir. 2018); *X-Cel Sales LLC v. A.O. Smith Corp.*, No. CV 11-1082-PHX-GMS, 2012 WL 273693, at *4 (D. Ariz. Jan. 31, 2012) (denying motion to dismiss because "when a contract's terms are indefinite and ambiguous, or if the evidence shows that more than one inference can be drawn ... or if there is evidence of circumstances and relations outside of the written agreement ... a question of fact arises which must be determined by the jury") (internal citations omitted).

## V. CUMIS'S MOTION SHOULD BE DENIED BECAUSE THE PLASTIC CARD EXCLUSION DOES NOT CONTAIN SPECIFIC LANGUAGE EXCLUDING COVERAGE FOR ALL CONCURRENT CAUSES OF LOSS

CUMIS's argument that the Bond's Plastic Card/PIN exclusion bars TruWest's claim lacks merit. That exclusion purports to exclude losses resulting "directly or indirectly from…the use of a plastic or other type of card, or plastic card number, to effect a transaction." (Mot., Ex. A at CUMIS_000064.) CUMIS contends that because the bad actors used a debit card to liquidate the member's accounts after they hacked the account and drew down on the customer's HELOC, the exclusion applies to wipe out coverage. (Mot. at 8.) This argument fails for the same reasons as CUMIS's causation arguments.

As established above, "if an insurer wishes to limit liability, it must employ language in the policy which clearly and distinctly communicates to the insured the nature of the limitation." *Holy Trinity*, 2006 WL 18488, at \*5 (*quoting Roberts*, 705 P.2d at 1337). This could have been done using language similar to that in the policies in *Holy Trinity* or *Millar*, where it was clearly stated that certain things would not be covered even if the loss was caused by a combination of other concurrent causes that would otherwise be covered. Without explicit language warning that coverage is utterly lost if the excluded event is found anywhere in the causal chain, exclusionary clauses must be "interpreted narrowly ***against*** the insurer." *Scottsdale Ins. Co*, 158 Ariz. at 479 (emphasis added).

Moreover, the predominating cause of TruWest's harm was not the use of a plastic card—it was the HELOC draw-down. The HELOC loan proceeds were what was stolen; the debit card was merely the instrument the fraudsters happened to use to move the already-stolen money out of the account. Without the fraudulent HELOC draw-down, there would and could have been no theft of the HELOC funds. That the fraudsters used a debit card rather than a wire transfer, online transfer, "bill pay" check, paper check, or simply walking into a branch to withdraw with the funds is incidental to the fundamental electronic crime. The fraudster's means of liquidating the stolen funds is the functional equivalent of a bank robber's choice of transportation after a bank robbery—is the bank any more robbed if the crooks take a cab, hop on a bus, or use a getaway car? All of these are merely vehicles or

mechanisms for accessing money that had already been stolen, whether from the bank or electronically via the HELOC draw-down in this case. To allow this exclusion to swallow the Electronic Crime coverage is to render that coverage illusory.

When a clause appears ambiguous, the Court should interpret it by looking to legislative goals, social policy, and the transaction as a whole. *First Am. Title Ins. Co.*, 187 P.3d at 1110. If an ambiguity remains after considering these factors, the Court must construe it against the insurer. *Id.* Here, the best CUMIS can claim is that the Bond is ambiguous. Hence, the Court should deny the motion to dismiss. *Teufel v. Am. Fam. Mut. Ins. Co.*, 244 Ariz. 383, 387, 419 P.3d 546, 550 (2018) ("[E]ven assuming any lingering doubt about the breadth of the exclusion, we strictly construe it in favor of Teufel as the insured. … If American Family had intended to exclude third-party claims that would not exist 'but for' a contract, as the policy's drafter it should have expressly communicated this intention.").

Arizona law aligns with intuitive fairness and common sense: TruWest purchased coverage for Electronic Crimes and is entitled to the benefit of that coverage.

## VI.    CONCLUSION

For all of the foregoing reasons, TruWest's loss is covered under the Bond's Electronic Crime provision, and CUMIS's Plastic Card/PIN exclusion does not apply. TruWest respectfully requests that the Court deny CUMIS's motion to dismiss in its entirety.

Dated: May 5, 2026

Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**

By:  */s/ Gregory S. Korman*

Gregory S. Korman (*Pro Hac Vice*)
greg.korman@katten.com
Ashley T. Brines (*Pro Hac Vice*)
ashley.brines@katten.com
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067-5010

Telephone: 310.788.4400
Facsimile: 310.788.4471

**CHESTER LAW, PLLC**
Mark D. Chester
9332 N. 95th Way, Suite 109
Scottsdale, Arizona 85258
Telephone: 480.922.3939
Facsimile: 602.704.6069
mchester@mdclawyers.com


Attorneys for Plaintiff TruWest Credit Union


Filed electronically with the Court and served on parties of record by the Court's CM/ECF system on this 5th day of May, 2026.


*/s/ Gregory S. Korman*