FAEGRE DRINKER BIDDLE & REATH LLP
Kathryn E. Bettini (No. 032568)
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
Telephone: (480) 643-1850
E-mail: kathryn.bettini@faegredrinker.com

Attorney for Defendant
CUMIS Insurance Society, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| TruWest Credit Union,<br><br>      Plaintiff,<br><br>      vs.<br><br>CUMIS Insurance Society, Inc., an Iowa corporation, and DOES 1-10,<br><br>      Defendants. | No. CV-26-01736-PHX-DGC<br><br>REPLY IN SUPPORT OF DEFENDANT CUMIS INSURANCE SOCIETY, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT |

Faegre Drinker Biddle & Reath LLP
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
(480) 643-1850

Defendant CUMIS Insurance Society, Inc. ("CUMIS") respectfully files its reply in support of its Motion to Dismiss Plaintiff TruWest Credit Union's ("TruWest's") First Amended Complaint ("FAC") (4/7/2026) (Dkt. No. 10, "Motion") for failure to state a claim upon which relief can be granted.

## INTRODUCTION

TruWest does not dispute that if it has failed to allege facts that, if proven at trial,[1] would establish coverage under the fidelity bond it purchased from CUMIS, all of its causes of action necessarily fail. Instead, in its opposition to CUMIS's Motion, TruWest argues that under the facts pleaded, it is entitled to Electronic Crime Coverage because: (1) the actions

---

[1] TruWest's opposition (Dkt. No. 20) contains numerous references to facts and/or propositions allegedly "conceded" by CUMIS in its Motion. [*See, e.g.*, *id.* at 5 ("In fact, CUMIS concedes every element of coverage except whether the loss resulted 'directly' from the covered acts.")] CUMIS does not believe that TruWest (or its counsel) are contending that CUMIS has conceded the truthfulness of the facts set forth in the complaint or the coverage arguments that may arise from those facts *for all purposes*, but to be clear, through its Motion CUMIS makes no admissions or concessions regarding any factual allegation set forth in the FAC. It does, however (as it must), accept all well-pleaded factual allegations as true and applies those factual allegations to the language of the fidelity bond at issue to argue that those facts do not establish coverage.

that would trigger Electronic Crime Coverage "directly" caused the loss; and (2) the bond (and, in particular, the Plastic Card/PIN exclusion) does not contain "anti-concurrent cause" language.

TruWest's argument regarding "direct" causation is that, without the unauthorized transfer of funds from the member's HELOC to the member's checking account, the subsequent "liquidation" of those funds from the account could not have happened. In essence, TruWest asks this Court to interpret the bond's requirement of "direct" causation as one and the same with the legal requirement of "but-for" or "proximate" causation. Most telling about this argument, however, is that TruWest fails to cite a *single case* to support it. The reason is simple. Numerous cases in this Circuit contradict and undermine TruWest's argument. Those cases hold that "direct" causation, in this context, means exactly what it says: that the covered actions must lead directly and without intervening causes to the claimed loss. Here, that was simply not the case. The "loss" claimed by TruWest is the amount it was required to reimburse its member, which was *only necessary after the funds were liquidated* through an intervening, subsequent, and non-covered set of actions. There is thus no "loss" directly caused by "electronic crime" and no coverage under the bond's Electronic Crime Coverage.

TruWest's secondary argument focuses on what it characterizes as a lack of specific language excluding coverage for all concurrent causes of loss. However, the Plastic Card/PIN Exclusion unambiguously excludes coverage for any and all losses resulting "directly or indirectly" from the use of a PIN to access an ATM or the use of a plastic card or plastic card number to effect a transaction (which TruWest's FAC expressly acknowledges happened here). When read in the context of the bond as a whole, an exclusion for losses resulting "directly or indirectly" from the use of a PIN at an ATM or a plastic card number to effect a transaction is clearly meant to apply *even if there are arguably other covered causes*. This is especially true where the exclusion specifically provides an exception for Electronic Crime Coverage in only limited circumstances that are not present here, thus indicating clearly that the exclusion precludes Electronic Crime Coverage in all other circumstances. To interpret the exclusion otherwise (*i.e.*, as only applying if the excluded clause is the *sole* cause of the

Faegre Drinker Biddle & Reath LLP
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
(480) 643-1850

loss) renders numerous provisions of the bond meaningless and/or superfluous.

As set forth in more detail below, TruWest's arguments lack merit and CUMIS's Motion should be granted in its entirety and with prejudice.

**Argument**

TruWest's opposition to the Motion rests on the faulty premises that: (1) the facts pleaded in the FAC establish that TruWest's loss resulted *directly* from the fraudulent and unauthorized transfer of funds from member's HELOC account to that same member's checking account (thus bringing the loss within the scope of Electronic Crime Coverage); and (2) the Plastic Card/PIN Exclusion is somehow ambiguous and/or inapplicable because it does not explicitly state that the exclusion applies regardless of the existence of any other cause of the loss.  For the reasons set forth below, these arguments are without merit and CUMIS's Motion should be granted.

## I.     THE LOSS DID NOT RESULT "DIRECTLY" FROM A COVERED CAUSE.

TruWest does not dispute that the bond's Electronic Crime Coverage will only indemnify it for loss "resulting directly from" covered conduct.  [Dkt. No. 20 (Opp.) at 3; Dkt. No. 10 (Mot., Ex. A) at CUMIS_000031]  TruWest alleges that the conduct that triggers Electronic Crime Coverage is the unauthorized transfer of funds from the HELOC account of a TruWest member to that same member's checking account, *even though the member did not sustain a loss from that conduct because the money remained in the member's account*. TruWest now argues that its loss resulted "directly from" the HELOC to checking account transfer because it "set every other event in motion" and "enabled the theft" "because without it the loss never would have occurred."  [Dkt. No. 20 (Opp.) at 5]

TruWest does not cite a *single case* that interprets the term "direct" in the context of an insurance policy as merely requiring that an action be only one of a chain of actions that cause a result or a simple "but for" cause of the loss.  Indeed, courts in this Circuit have clearly stated that a requirement that loss result "directly" is "narrower than proximate cause." *Valley Cmty. Bank v. Progressive Cas. Ins. Co.*, 854 F. Supp. 2d 697, 709 (N.D. Cal. 2012) (noting that the Ninth Circuit has repeatedly "rejected arguments that 'loss resulting directly from' should be

Faegre Drinker Biddle & Reath LLP
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
(480) 643-1850

3

construed to mean 'loss proximately caused by,' instead finding that 'direct means direct' and was narrower than proximate cause"). In its Motion, CUMIS cited numerous cases that have followed this interpretation. [*See* Dkt. No. 10 (Mot.) at 8] In this District, Judge Silver has adopted this logic as the appropriate interpretation of the term "direct" in an insurance policy. *See Discovery Land Co. LLC v. Berkley Ins. Co.,* No. CV-20-01541-PHX-ROS, 2023 WL 2503634, at *7 (D. Ariz. Mar. 14, 2023) (citing *Vons Cos., Inc. v. Fed. Ins. Co.*, 212 F.3d 489, 492 (9th Cir. 2000)).

TruWest improperly attempts to avoid the fact that courts have ***repeatedly*** interpreted the term "direct" in an insurance policy according to its ordinary usage (*i.e.*, "proceeding from one point to another in time or space without deviation or interruption," "marked by absence of intervening agency, instrumentality, or influence," or "stemming immediately from a source."), *id.*, by raising unpersuasive factual differences between the claims involved in those cases and the case here. But those factual differences are immaterial to the policy language at issue here. Regardless of the factual context of the claims in the cited cases, the ***legal principle*** (*i.e.*, how the term "direct" is to be interpreted) is squarely addressed, and the settled interpretation completely contradicts TruWest's preferred (yet legally incorrect) interpretation.

None of TruWest's cited cases hold that a loss is the "direct" result of a covered action if the action is merely the "but for" or "proximate" cause of the loss. As explained above, the cases require a different finding: "direct means direct." *Discovery Land Co.*, 2023 WL 2503634, at *7 (cleaned up). At most, TruWest misconstrues a case cited by CUMIS, stating that a hypothetical scenario where a loss would be "directly" caused by covered conduct is "comparable to the one present here[.]" [Dkt. No. 20 (Opp.) at 7 (citing *Taylor & Lieberman v. Fed. Ins. Co.*, No. CV 14-3608 RSWL SHX, 2015 WL 3824130, at *4 (C.D. Cal. June 18, 2015), *aff'd*, 681 F. App'x 627 (9th Cir. 2017))] But the hypothetical scenario described in *Taylor* in which coverage would attach—if funds were held in an "account owned or attributed to ***Plaintiff***, such as an escrow account [] and a hacker had entered into Plaintiff's computer system and been able to withdraw funds such that Plaintiff's accounts were immediately

Faegre Drinker Biddle & Reath LLP
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
(480) 643-1850

depleted"—is **not** comparable to the facts alleged here. *Id.* Here, the account accessed was the member's account and not an account owned or controlled by TruWest, but more importantly, the individual's entry into the computer system did **not** result in Plaintiff's accounts being "immediately" depleted. As explained below, that required additional, subsequent steps, which were **not** directly accomplished by the fraudsters' electronic access into the member's HELOC or the member's checking account.

Here, as pleaded by the FAC, the bad actors **first** accessed the member's accounts electronically and made unauthorized transfers to that member's checking account, and only **later**, in subsequent steps, **after** the funds were transferred to the checking account, did the bad actors obtain a debit card in the member's name and "liquidate" the checking account by using that card. [FAC ¶ 10] While TruWest now claims that the fraudsters always "controlled" the checking account, there is no such allegation in the FAC. While it may be that the bad actors could access the member's checking account, the account unquestionably remained in the **member's** name and subject to the **member's** control. TruWest only reimbursed its member after the funds were "liquidated," and it is without question that, had the scheme been uncovered prior to the "liquidation," there would have been **no loss**. It was only the subsequent, intervening actions of the bad actors using a debit card to "liquidate" the checking account that resulted in the loss.

TruWest argues that CUMIS cannot "avoid its own Electronic Crime Coverage every time a fraudulent scheme has more than one step." [Dkt. No. 20 (Opp.) at 6] To some extent, CUMIS agrees. CUMIS is not arguing that Electronic Crime Coverage does not apply because the scheme involved multiple steps. But the terms of the bond are clear that the step that implicates Electronic Crime Coverage must **directly** cause the loss. Here, even assuming the truth of all of TruWest's allegations, the loss would not have occurred but for subsequent, intervening, and uncovered actions. As multiple courts have acknowledged, "direct" means what it says, and thus Electronic Crime coverage does not apply here.

## II. THE PLASTIC CARD/PIN EXCLUSION SEPARATELY BARS COVERAGE

As noted in CUMIS's Motion, even if the unauthorized electronic transfer of funds from

Faegre Drinker Biddle & Reath LLP
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
(480) 643-1850

the member's HELOC to his checking account could somehow be said to have directly caused the loss here (which it did not), the bond's Plastic Card/PIN exclusion still applies. TruWest does not appear to argue that the Plastic Card/PIN exclusion, which excludes losses resulting "directly or indirectly from . . . the use of a personal identification number (PIN) to access an 'automated teller machine,' or the use of a plastic or other type of card, or plastic card number, to effect a transaction," [Dkt. No. 10 (Mot., Ex. A) at CUMIS_000090], does not on its face apply to this situation. It clearly does. TruWest itself pleads that the bad actors here used a debit card to "liquidate" and steal funds from the member's checking account. [FAC ¶¶ 10-11] Those "stolen funds" that were reimbursed by TruWest represent its loss and without the liquidation, there would have been no reimbursement and no loss. The loss was thus caused by the use of a plastic card to effect the "liquidating" transactions.

TruWest nonetheless argues that this exclusion cannot be enforced because it does not contain explicit language stating that the exclusion will bar coverage even if there is a separate, covered cause. But read as a whole, the bond's exclusions are unambiguously intended to apply even if the loss is caused by a separate, concurrent, and covered peril.

Generally, the purpose of "anti-concurrent cause" language in an insurance policy is to avoid the application of the "efficient proximate cause" doctrine, which provides that "when a loss is caused by both a covered and an excluded peril under an insurance policy . . . the insured may recover if the covered period was the 'dominant and efficient cause' of the loss." *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 433-34 (5th Cir. 2007) (declining to employ Mississippi's default "efficient proximate cause" doctrine and noting that anti-concurrent clause language is meant to "circumvent default causation rules like efficient proximate cause"). As numerous courts applying Arizona law have recognized, however, Arizona has not adopted the "efficient proximate cause" doctrine. *See, e.g.*, *Stankova v. Metro. Prop. & Cas. Ins. Co.*, 788 F.3d 1012, 1015 (9th Cir. 2015) ("Arizona has not adopted the doctrine of 'efficient proximate cause' in deciding issues of causation in insurance disputes."); *Millar v. State Farm Fire & Cas. Co.*, 167 Ariz. 93, 97, 804 P.2d 822, 826 (Ct. App. 1990) ("We have never adopted the 'efficient proximate cause' rule. In Arizona an insurer is

Faegre Drinker Biddle & Reath LLP
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
(480) 643-1850

permitted to limit its liability unless to do so would be inconsistent with public policy."). It is thus unclear as to why "anti-concurrent cause" language would even be ***necessary*** to enforce a policy exclusion where there is a separate covered cause. There is no "efficient proximate cause" rule that the insurer would need to contract around and, as a fundamental principle, policy exclusions do not even become relevant until and unless there is a showing that the loss was caused by a covered peril. *See Keggi v. Northbrook Property & Cas. Ins. Co.*, 199 Ariz. 43, 46, 13 P.3d 785, 788 (Ct. App. 2000) (insurer only bears burden of establishing exclusion applies if insurer first establishes coverage under an insuring clause).

Nonetheless, certain courts applying Arizona law have stated that because Arizona has not adopted the "efficient proximate cause" doctrine, an insurer is permitted to limit its liability with a concurrent causation lead-in provision. *See Border Chicken AZ LLC v. Nationwide Mut. Ins. Co.*, 501 F. Supp. 3d 699, 704 (D. Ariz. 2020). While the bond at issue here does not contain the express language found in some of the cases cited by TruWest in its opposition (*i.e.*, stating that an exclusion will apply "regardless" of other concurrent causes), it does contain language that, read in the context of the bond as a whole, unambiguously provides that the exclusion applies regardless of the existence of other potentially covered causes.

***First***, the Plastic Card/PIN Exclusion states that it applies to any loss that results "directly or indirectly" from the use of a PIN number at an ATM or the use of a plastic or other type of card, or plastic card number, to effect a transaction. This is important because cases that have found the lack of appropriate limiting clauses have done so based on a finding that the policy's only reasonable reading is that the exclusion is meant to apply only if the excluded peril is the *sole* cause of the loss. *See, e.g.*, *Fairfield Homes, Inc. v. Granite State Ins. Co.*, No. CV 09-360 TUC DCB, 2011 WL 11683253, at *6 (D. Ariz. Feb. 14, 2011) (citing *Winters v. Charter Oak Fire Ins.*, 4 F. Supp. 2d 1288, 1295 (N. Mex. 1998)). But any such reading here would necessarily render the phrase "or indirectly" entirely meaningless—the use of the term "indirect" necessarily contemplates the application of this exclusion ***even where there is a covered, "direct" cause of the loss***.

Indeed, Judge Tuchi recently recognized as much in a case involving the application of

a virus exclusion in a business owner's insurance policy.  *See Border Chicken AZ LLC*, 501 F. Supp. 3d at 704.  The exclusion at issue in that policy contained language that barred coverage for loss or damage caused "directly or indirectly" by a virus.  *Id.* at 704.  While the exclusion also stated that it would apply "regardless of any other cause or event that contributes concurrently or in any sequence to the loss," *id.*, Judge Tuchi, focusing primarily on the "directly or indirectly" language, stated that "it is unambiguous that the Policy does not cover any losses directly or indirectly caused by the virus" and enforced the same because "[a]t the least, COVID-19 was an indirect cause of Plaintiff's loss."  *Id.*  Nothing about Judge Tuchi's opinion indicated that the "regardless" clause was in any way necessary to enforce the virus exclusion in the light of other potentially covered causes.

*Moreover*, the Plastic Card/PIN exclusion in this case explicitly defines the type of coverages to which it does not apply (*i.e.*, coverages that are exceptions to the exclusion). [Dkt. No. 10 (Mot., Ex. A) at CUMIS_000090]  Specifically, it explicitly defines the limited circumstances in which it would not apply to Electronic Crime Coverage, which is the coverage that TruWest claims applies here.  *Id.*  As noted in CUMIS's Motion, it is TruWest's burden to plead facts that would bring this case within the scope of the Electronic Crime exception to the Plastic Card/PIN exclusion.  *See Selective Ins. Co. of S.C. v. Yocum*, 799 F. Supp. 3d 907, 913 (D. Ariz. 2025).  And it has not pleaded any such facts.  [*See* Dkt. No. 10 (Mot.) at 9]  But more to the point, the mere fact that the Plastic Card/PIN exclusion specifically defines the circumstances in which Electronic Crime Coverage would be available when the exclusion would otherwise apply on its face clearly indicates that ***in all other circumstances***, the Plastic Card/PIN exclusion bars recovery for Electronic Crime Coverage. Any other interpretation would be patently unreasonable, as there would be no need whatsoever for exceptions to the Plastic Card/PIN exclusion; the Plastic Card/PIN exclusion would ***always*** be trumped when perils covered under Electronic Crime Coverage directly resulted in the loss.  *See, e.g.*, *Cravens v. Montano*, 259 Ariz. 444, 567 P.3d 745, 750 (2025) (court cannot interpret language of an insurance contract in a way that renders any other term superfluous).

It is axiomatic under Arizona law that when policy language (and even a policy exclusion) is clear, a court must enforce it as written. *See Young v. Owners Ins. Co.*, 671 F. Supp. 3d 1000, 1006 (D. Ariz. 2023). Courts will not "pervert or do violence to the language used, or expand it [beyond] its plain and ordinary meaning or add something to the contract which the parties have not put there." *Id.* (quoting *D.M.A.F.B. Fed. Credit Union v. Emps. Mut. Liab. Ins. Co. of Wis.*, 96 Ariz. 399, 396 P.2d 20, 23 (1964)). Here TruWest claims that the language of the Plastic Card/PIN exclusion is somehow ambiguous, but language is "not ambiguous just because the parties to it . . . disagree about its meaning. Language in a contract is ambiguous only when it can reasonably be construed to have more than one meaning." *Id.* (quoting *In re Estate of Lamparella*, 210 Ariz. 246, 109 P.3d 959, 963 (Ct. App. 2005)). For the reasons noted herein, the bond is clear, unambiguous, and subject to only one reasonable interpretation in this situation; the fact that TruWest disagrees that with the result of the application of the bond's terms to the facts of its claims does not create an ambiguity preventing dismissal with prejudice here.

**Relief Requested**

For the reasons set forth above and in its Motion, CUMIS respectfully requests that the Court enter judgment on the pleadings in favor of CUMIS and dismiss TruWest's First Amended Complaint with prejudice.

DATED this 12th day of May, 2026.

FAEGRE DRINKER BIDDLE & REATH LLP

By: s/ Kathryn E. Bettini
Kathryn E. Bettini
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251

Attorneys for Defendant
CUMIS Insurance Society, Inc.

Faegre Drinker Biddle & Reath LLP
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
(480) 643-1850

Filed electronically with the Court and served on parties of record by the Court's CM/ECF system this 12th day of May, 2026.

  s/ Mary Ann Villa

377242678

Faegre Drinker Biddle & Reath LLP
4800 North Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
(480) 643-1850