**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| TruWest Credit Union,<br>Plaintiff,<br>v.<br>CUMIS Insurance Society, Inc.,<br>Defendant. | No. CV-26-01736-PHX-DGC<br>**ORDER** |

Plaintiff TruWest Credit Union asserts claims for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief against Defendant CUMIS Insurance Society. Doc. 10. Defendant has filed a motion to dismiss. Doc. 17. The motion is fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f). For reasons stated below, the Court will deny the motion.

**I. Background.**

The operative amended complaint contains the following allegations. Plaintiff is insured under a fidelity bond issued by Defendant (the "Bond"). Doc. 10 ¶ 7. In November 2023, unidentified fraudsters gained access to the account of one of Plaintiff's members by obtaining the member's account verification information. *Id.* ¶ 8. The fraudsters called Plaintiff's contact center and updated the member's account information. *Id.*

Between November 2023 and March 2024, the fraudsters accessed the member's home equity line of credit ("HELOC") and electronically transferred funds from the

HELOC to the member's checking account. *Id.* ¶ 10. The fraudsters then used a debit card in the member's name to liquidate the stolen funds from the checking account. *Id.* ¶¶ 10-11. Plaintiff reimbursed the member for the stolen funds and made a claim for its loss under the Bond, which Defendant denied. *Id.* ¶¶ 12-13.

Plaintiff claims that its loss falls squarely within the Bond's coverage. *Id.* ¶ 14. Specifically, Plaintiff asserts that the Bond covers losses resulting from transfers of funds fraudulently effectuated through the withdrawal or transfer of the proceeds of an accountholder's loan by a person other than the accountholder. *Id.* Defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that there is no coverage for the loss under the Bond's Electronic Crime provision and that the Plastic Card/PIN exclusion otherwise bars coverage. Doc. 17 at 2.[1]

**II. Rule 12(b)(6) Standard.**

A complaint that sets forth a cognizable legal theory will survive a Rule 12(b)(6) motion if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When deciding a Rule 12(b)(6) motion, the complaint's factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 556.

**III. Discussion.**

Courts in Arizona apply "a rule of common sense" when interpreting insurance policies. *First Am. Title Ins. Co. v. Johnson Bank*, 372 P.3d 292, 300 (Ariz. 2016) (quoting *Emps. Mut. Cas. v. DGG & CAR, Inc.*, 183 P.3d 513, 515 (Ariz. 2008)). Under this rule,

[1] A copy of the Bond is attached to Defendant's motion. *See* Doc. 17-1. The Court may consider this document in deciding the motion because Plaintiff refers extensively to the Bond in the complaint and the Bond forms the basis of Plaintiff's claims. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (explaining that "[t]he doctrine of incorporation by reference may apply . . . when a plaintiff's claim about insurance coverage is based on the contents of a coverage plan").

words are given their ordinary meaning and must be viewed from "the standpoint of the average layman who is untrained in the law or insurance." *Aztar Corp. v. U.S. Fire Ins. Co.*, 224 P.3d 960, 966 (Ariz. Ct. App. 2010) (quoting *Sparks v. Republic Nat'l Life Ins.*, 647 P.2d 1127, 1135 (Ariz. 1982)). Courts also may consider "legislative goals, social policy, and . . . the transaction as a whole." *Emps. Mut. Cas.*, 183 P.3d at 515 (quoting *State Farm Mut. Auto. Ins. v. Wilson*, 782 P.2d 727, 734 (Ariz. 1989)). If the meaning of a policy remains ambiguous under the facts of the case, then the court construes the policy against the insurer. *Id.*; *see also Team 44 Rests. LLC v. Am. Ins.*, 562 F. Supp. 3d 61, 65 (D. Ariz. 2021); *Loza v. Am. Heritage Life Ins.*, 434 F. App'x 687, 689 (9th Cir. 2011).

**A. Electronic Crime Coverage.**

The Court must first determine whether Plaintiff's loss may be covered under the Bond's Electronic Crime provision. That provision covers losses in three circumstances: (1) direct loss from fraudulent entry or change of electronic data within a computer system; (2) direct loss from malicious destruction of electronic data stored in a computer system; and (3) direct loss from fraudulent withdrawal or transfer of the proceeds of an accountholder's loan through unauthorized access of a computer system. Doc. 17-1 at 31-32. The specific language addressing the third circumstance, which is the relevant circumstance here, reads as follows:

> We will pay you for your loss resulting directly from payments or transfers of funds fraudulently effectuated through the withdrawal or transfer of the proceeds of an "accountholder's" existing "loan" by a person other than the "accountholder" who has obtained unauthorized access into the "accountholder's" account information, as maintained in "electronic data" form on a "computer system."

*Id.* at 32.

For purposes of its motion, Defendant does not dispute that Plaintiff's loss would not have occurred absent the fraudulent transfer of funds from the member's HELOC, that the HELOC funds were transferred by a person other than the member, or that the fraudsters obtained unauthorized access to the member's account information maintained as

electronic data on a computer system. *See* Docs. 20 at 6, 21 at 1 n.1. Defendant instead argues that the fraudsters engaged in a multi-step scheme to steal the member's funds, and that the Electronic Crime provision does not cover the loss because the loss did not result "directly" from the transfer of the HELOC funds to the member's checking account. Doc. 17 at 5-6. At that point, Defendant contends, there was no loss because the member retained access to the funds. *Id.* at 7. Defendant asserts that the loss occurred later when the fraudsters used a debit card to withdraw funds from the checking account. *Id.* at 7-8.

Plaintiff argues that Defendant ignores the fraudsters' cohesive scheme to steal the member's loan proceeds by disregarding the HELOC transfer and artificially focusing on the withdrawals from the member's checking account. Doc. 20 at 6. Plaintiff asserts that Defendant cannot deny Electronic Crime coverage every time a fraudulent scheme has more than one step. *Id.* at 6-7. Plaintiff also contends that while there may have been more than one direct cause of the loss, the HELOC transfer clearly was one of them. *Id.* at 6, 9.

Construction of an insurance contract is normally a question of law for the Court. In this case, the Court is not comfortable making a final interpretation of the Bond based solely on allegations of the complaint and a few pages of argument by the parties. Nor can the Court conclude, as a matter of law, that there is no coverage for Plaintiff's loss under the Electronic Crime provision.

Both parties cite cases in support their positions, none of which appears to be directly on point. The Court, however, has found *Kinecta Federal Credit Union v. CUMIS Insurance Society, Inc.*, No. 2:24-CV-02145-HDV-MRW, 2024 WL 5423803 (C.D. Cal. Nov. 8, 2024), a case involving the same Electronic Crime provision, issued by the same Defendant, with a very similar fraudulent scheme, and addressing the same arguments made by Defendant in this case. *Kinecta* rejected Defendant's argument.

*Kinecta* begins by correctly observing that the Bond term "your loss" refers to the credit union's loss, not the member's loss. *See id.* at *2. Thus, the phrase "resulting directly from" refers to the loss suffered by Plaintiff, not its member. The relevant question is this: when it suffered a loss by reimbursing its member, did Plaintiff's loss result

"directly from" the unauthorized transfer of funds from the member's HELOC account by a person other than the member? The key interpretive term is the adverb "directly," which the Bond does not define. *See id.* at *2-3. *Kinecta* notes several possible meanings of "directly" that could apply to a fraudulent scenario like this. *Id.*

Defendant also identifies various definitions of the term "direct," such as "proceeding from one point to another in time or space without deviation or interruption," "marked by absence of intervening agency, instrumentality, or influence," and "stemming immediately from a source." Doc. 21 at 4. Here, if the theft was caused from beginning to end by the same fraudsters – as alleged in the complaint – Plaintiff's loss can plausibly be viewed as "stemming immediately from" the fraudsters' continuous scheme "without deviation or interruption" and with the "absence of intervening agency, instrumentality, or influence." Accepting the allegations of the complaint as true, the mere fact that the theft involved multiple steps by the same fraudsters may be legally immaterial because the loss to Plaintiff "resulted directly from" the initial transfer of the funds from the HELOC. *See Kinecta*, 2024 WL 5423803, at *3.[2]

Defendant cites cases for the proposition that "direct means direct" and "loss resulting directly from" is narrower than "proximate cause." Docs. 17 at 7-8, 21 at 3-4 (citing *Vons Cos. Inc. v. Fed. Ins. Co.*, 212 F.3d 489, 492 (9th Cir. 2000); *United Gen. Title Ins. Co. v. Am. Int'l Grp., Inc.*, 51 F. App'x 224, 226 (9th Cir. 2002) (citing *Vons*); *Valley Cmty. Bank v. Progressive Cas. Ins.*, 854 F. Supp. 2d 697, 709 (N.D. Cal. 2012) (same); *Taylor & Lieberman v. Fed. Ins. Co.*, No. CV 14-3608 RSWL SHX, 2015 WL 3824130, at *3 (C.D. Cal. June 18, 2015) (same); *Discovery Land Co. LLC v. Berkley Ins. Co.*, No. CV-20-01541-PHX-ROS, 2023 WL 2503634, at *7 (D. Ariz. Mar. 14, 2023) (same)). The Court does not find these cases as relevant as *Kinecta*.[3]

---

[2] To be clear, the Court does not find as a matter of law that the fraudsters' scheme falls within the Electronic Crime provision. That question will be resolved later. At this stage, however, the allegations of the complaint describe a circumstance that could fall within a common-sense interpretation of the Bond's language. *See id.* at *3 n.1.

[3] Moreover, contrary to the sense of Defendant's argument, courts in California have

The Court will deny Defendant's motion on its argument that there is no coverage for Plaintiff's loss under the Electronic Crime provision. *See Fed. Credit Union v. CUMIS Ins. Society*, No. CIV.A. 10-5375, 2010 WL 5464884, at *3 (E.D. Pa. Dec. 29, 2010) (denying motion to dismiss where the plaintiff sought coverage under the Electronic Crime and other bond provisions because "discovery may be appropriate . . . and the determination of the meaning of the policy provisions should await any discovery either party chooses to take").

**B. Plastic Card/PIN Exclusion.**

Defendant argues that Plaintiff's claims fail as a matter of law because the Bond's Plastic Card/PIN provision excludes losses from "the use of a plastic or other type of card, or plastic card number, to effect a transaction." Doc. 17 at 8. But that exclusion provides an exception for Electronic Crime coverage "if the loss involves a transaction at a 'kiosk,' where a plastic card may be used strictly as an 'authentication mechanism[.]'" Doc. 17-1 at 91. Plaintiff's complaint alleges generally that "the fraudsters obtained a debit card in the member's name and then liquidated the stolen funds through use of that card" (Doc. 10 ¶ 10), but the complaint does not make clear how the card was used. The same was true in *Kinecta*. *See* 2024 WL 5423803, at *4 ("[T]he record is undeveloped (and the complaint does not make clear) as to whether the ultimate transfer out was *necessarily dependent* on the fraudsters' use of the member's initial PIN number. The withdrawals could have been made simply using the banking card number, or they could have been made after the PIN number was changed by the hackers, raising legal and factual issues as to whether the exclusion applies.").

---

rejected the argument that "loss resulting directly from" is narrower than proximate cause and have instead found that proximate cause applies in fidelity insurance cases. *See Kinecta*, 2024 WL 5423803, at *3 n.2 (citing *Banc of Cal., Nat'l Ass'n v. Fed. Ins. Co.*, 686 F. Supp. 3d 928, 937-38 (C.D. Cal. 2023) ("In *Julian v. Hartford Underwriters Ins. Co.*, 35 Cal. 4th 747, 754, 27 Cal.Rptr.3d 648, 110 P.3d 903 (2005), the California Supreme Court held that '[p]olicy exclusions are unenforceable to the extent that they conflict with [Cal. Ins. Code § 530] and the efficient proximate cause doctrine.' That is, parties to an insurance policy cannot contract out of the efficient proximate cause standard of section 530. *Id.* Since *Julian*, California state and federal courts have recognized that the efficient proximate cause standard must be read into insurance contracts under California law.")).

Defendant argues that Plaintiff has failed to plead facts showing that the exception for Electronic Crime coverage applies. Doc. 17 at 9. But Defendant cites no legal authority suggesting that Plaintiff must plead around exclusions or other policy defenses, and case law suggests otherwise. *See Morera v. UnitedHealthcare Ins. Co.*, 757 F. Supp. 3d 1308, 1313 (S.D. Fla. 2024) (explaining that "a policy exclusion is generally regarded as an affirmative defense" and a "plaintiff *is not required* to negate an affirmative defense in its complaint").[4] Further, Rule 8's pleading standard "does not require 'detailed factual allegations[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also City of Oakland v. BP PLC*, 969 F.3d 895, 910 (9th Cir. 2020) (explaining that a Rule 12(b)(6) motion "is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." (citation omitted)).

Defendant has not shown that the allegations of the complaint, when taken as true, preclude coverage for Plaintiff's loss. The Court will deny Defendant's motion.[5]

**IT IS ORDERED** that Defendant's motion to dismiss (Doc. 17) is **denied**. The Court will set a case management conference by separate order.

Dated this 13th day of October, 2026.

David G. Campbell
Senior United States District Judge

---

[4] Defendant's citation to *Selective Insurance. Co. of South Carolina v. Yocum*, 799 F. Supp. 3d 907 (D. Ariz. 2025), is misplaced because the court merely explained, in ruling on a summary judgment motion, that "[i]f an insurer meets its burden to establish that an exclusion applies, the burden shifts back to the insured to establish tha[t] an exception to the exclusion affords coverage." *Id.* at 913.

[5] Given this ruling, the Court need not address Plaintiff's argument that the exclusion does not contain language excluding coverage for concurrent causes of loss. *See* Doc. 20 at 2-4, 13-14.